UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
:
INTERNATIONAL BUSINESS MACHINES : Case No.  10 CV 0128
CORPORATION, :
: Judge Castel
                  Plaintiff, :
:
     -against- : **COMPLAINT**
:
BGC PARTNERS, INC., : ECF CASE
:
                  Defendant. : **JURY TRIAL DEMANDED**
:
:
:
------------------------------------------------------- x

      Plaintiff International Business Machines Corporation ("IBM") for its complaint against defendant BGC Partners, Inc. ("BGC"), hereby alleges:

## PARTIES

      1.      Plaintiff IBM is a New York corporation, with its principal place of business at 1 New Orchard Road, Armonk, New York 10504.

      2.      Upon information and belief, Defendant BGC is a Delaware corporation with its principal place of business at 499 Park Avenue, New York, New York 10022.

## JURISDICTION AND VENUE

      3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the copyright laws of the United States, Title XVII of the United States Code, and this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because this action includes claims that are related to the

copyright claims and those supplemental claims form part of the same case or controversy as the copyright infringement claims.

4. Personal jurisdiction exists over the defendant because it has a principal place of business in the State of New York and regularly transacts business in the State of New York.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

## BACKGROUND FACTS

6. IBM is the world's largest computer and information technology employer and a leading provider of database management software. IBM's flagship software for database management and online transaction processing is called Informix. IBM purchased the Informix software in 2001 and since that time has continued to enhance the Informix software it offers to customers worldwide.

7. When IBM purchased the Informix software from Informix Corporation in 2001, Informix Corporation had existing contracts with various licensees, including, upon information and belief, a company known as Euro Brokers.

8. At least as early as 2003, IBM sent Euro Brokers a migration package so that Euro Brokers could migrate its Informix software maintenance to IBM and transition to IBM's Passport Advantage licensing program. A copy of IBM's International Passport Advantage Agreement is attached as Exhibit A.

9. The migration package made clear that Euro Broker's use of the Informix software would be governed by IBM's International Program License Agreement ("IPLA"). A copy of the IPLA is attached as Exhibit B.

10. On or about March 10, 2003, Euro Brokers sent IBM a purchase order for an Informix software maintenance package, acknowledging Euro Brokers' acceptance of the terms of the IBM Passport Advantage program. A copy of the purchase order is attached as Exhibit C.

11. On or about March 12, 2003, IBM sent Euro Brokers a Passport Advantage Proof of Entitlement confirming that Euro Brokers was licensed to use certain software and was entitled to maintenance of the same under the terms of the IPLA. A copy of the Proof of Entitlement is attached as Exhibit D.

12. On or about May 2005, Euro Brokers merged into BGC and, upon information and belief, BGC still does business under the name "Euro Brokers."

13. Between 2003 and 2008, Euro Brokers and/or BGC received other Passport Advantage Proof of Entitlement documents listing the software it was licensed to use and the maintenance to which it was entitled under the terms of the IPLA. Copies of the Proof of Entitlement documents are attached as Exhibits E-J.

14. At least between 2003 and 2008, Euro Brokers and/or BGC accessed IBM's Passport Advantage portal and downloaded copies of various software, including Informix software. During that process, upon information and belief, Euro Brokers and/or BGC affirmed its agreement to the terms of the IPLA and agreed to the terms of other IBM licenses.

15. All IBM Informix software used by Euro Brokers and/or BGC after 2003 is collectively referred to as the "Informix Software."

16. The Informix Software is covered by at least the following IBM copyright registrations: TX5-792-613; TX6-995-095; TX7-007-379; TX7-007-436; TX7-007-441; TX7-007-481; TX7-007-490.

17. During the summer of 2008, KPMG conducted an audit that showed BGC had insufficient licenses for all of the users using the Informix Software and copies of Informix Software running on BGC's computers. The insufficiently licensed Informix Software is referred to as the "Extra Informix Copies."

18. In September 2008, IBM sent BGC an invoice for $1,730,665.24 to account for certain unpaid license fees that BGC owed IBM for running the Extra Informix Copies. The invoice did not include all of the unpaid maintenance fees that BGC owes IBM for running the Extra Informix Copies.

19. BGC did not pay the September 2008 invoice.

20. On December 17, 2008, IBM offered BGC a new license that would cover the previously licensed copies of Informix Software, as well as the Extra Informix Copies. BGC did not accept the new license.

21. In December 2008, IBM terminated the IPLA effective as of December 31, 2008.

22. Upon information and belief, BGC has not destroyed its copies of the Informix Software as required by the IPLA.

23. In fact, BGC downloaded copies of additional Informix Software from IBM after December 31, 2008. That Informix Software is of significant value to IBM.

24. Upon information and belief, BGC continues to possess, run, and back up copies of the Informix Software.

## COUNT I

### COPYRIGHT INFRINGEMENT – 17 U.S.C. § 106

25. Plaintiff IBM incorporates by reference each of the allegations contained in the foregoing Paragraphs 1 through 24.

26. IBM has registered its Informix Software in compliance with the Federal copyright laws. IBM is the owner of all right, title and interest to the copyright registrations for the Informix Software. The relevant copyright registration numbers include, without limitation, TX5-792-613, TX6-995-095, TX7-007-379, TX7-007-436, TX7-007-441, TX7-007-481, and TX7-007-490, and copies of the registrations are attached as Exhibits K-Q.

27. In compliance with the Copyright Regulations, IBM filed with the Copyright Office copyright applications, registration fees, and deposits of the works being registered. The effective date of each copyright registration is the day on which the application, deposit and fee were received in the Copyright Office. 17 U.S.C. § 410(d). Therefore, the effective date of the copyright registrations at issue are, among others: July 14, 2003; November 10, 2009; and December 1, 2009.

28. The Informix Software is comprised of wholly original works of authorship that are copyrightable subject matter under the copyright laws of the United States, 17 U.S.C. §§ 101 et seq. IBM has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in, to and under the copyrights in the copyrighted Informix Software.

29. As the owner of the copyrights in the Informix Software, IBM enjoys the exclusive right to, among other things, reproduce the Informix Software. 17 U.S.C. §§ 101, 106.

30. Upon information and belief, BGC has been and is reproducing and using the copyrighted Informix Software without authorization from IBM.

31. BGC has infringed the copyrights in the Informix Software through its actions.

32. At all times relevant hereto, BGC has been aware or should have been aware of the existence of IBM's copyrights in the Informix Software and therefore, BGC is a willful infringer of IBM's copyrights.

33. The infringement of IBM's copyrights by BGC will cause imminent harm to IBM's reputation and goodwill unless restrained by this Court. BGC's infringement will irreparably harm IBM's business and deprive it of a competitive advantage. IBM has no adequate remedy at law for BGC's infringement. IBM has a substantial likelihood of success on

the merits with respect to copyright infringement and the injury faced by IBM substantially outweighs the injury that would be sustained by BGC as a result of granting injunctive relief. Furthermore, granting injunctive relief on the basis of BGC's copyright infringement would not adversely affect public policy or public interest.

## COUNT II

## BREACH OF CONTRACT

34. Plaintiff IBM incorporates by reference each of the allegations contained in the foregoing Paragraphs 1 through 33.

35. From at least mid-2003 through 2008, the IPLA and other IBM licenses governed BGC's right to use the Informix Software.

36. Under the terms of the IPLA and other IBM licenses, BGC was permitted to run on its computers a limited number of copies of the Informix Software.

37. In addition to running licensed copies of IBM's Informix Software, BGC also ran Extra Informix Copies, without paying sufficient licensing and maintenance fees, in contravention of the terms of the IPLA and other IBM licenses.

38. Part 1, Section 1 of the IPLA also required BGC to "destroy all copies of the Program and its PoE" upon termination of the IPLA by IBM.

39. IBM terminated the IPLA as of December 31, 2008, but upon information and belief, BGC did not destroy all copies of the Informix Software.

40. The obligations of BGC under the terms of the IPLA and other IBM licenses were in effect at all relevant times.

41. IBM performed all conditions, covenants and promises under the IPLA and other IBM licenses.

42. By at least running the Extra Informix Copies with insufficient licenses and insufficient payment of maintenance fees, and by failing to destroy all copies of the Informix Software upon termination of the IPLA, BGC breached the IPLA and other IBM licenses.

43. IBM has been and is continually and irreparably damaged as a result of BGC's breach of the IPLA and other IBM licenses, and has no adequate remedy at law.  BGC's unlawful conduct will continue to damage IBM unless enjoined by this Court.  IBM has a substantial likelihood of success on the merits with respect to this breach of contract claim and the damage faced by IBM substantially outweighs the injury that would be sustained by BGC as a result of granting injunctive relief.  Further granting injunctive relief would not adversely affect public policy or public interest.

## COUNT III

### REPLEVIN

44. Plaintiff IBM incorporates by reference each of the allegations contained in the foregoing Paragraphs 1 through 43.

45. IBM has the sole possessory right to all copies of the Informix Software at BGC.

46. BGC has no possessory right to the Informix Software.

47. IBM has a property interest superior to that of BGC in the Informix Software.

48. IBM has no adequate remedy at law for BGC's continuing wrongful possession of the Informix Software.

49. Plaintiff IBM is entitled to an Order of Seizure directing that BGC deliver all copies of the Informix Software in BGC's possession, custody, or control to the United States Marshall and/or Sheriff of New York County, pursuant to the provisions of Article 71 of the New York Civil Practice Law and Rules and Federal Rule of Civil Procedure 64.

**JURY DEMAND**

50.     IBM requests a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff IBM respectfully requests the following relief:

A.     Declare that defendant BGC has infringed IBM's copyrighted Informix Software.

B.     Pursuant to 17 U.S.C. § 502, preliminarily and permanently enjoin defendant BGC, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them, from infringing the copyrighted Informix Software in any manner, and from reproducing and preparing derivative works from the copyrighted Informix Software.

C.     Pursuant to 17 U.S.C. § 503, order the impounding of all copies, including all executing and archival copies, of the copyrighted Informix Software.

D.     Pursuant to 17 U.S.C. § 504, order an accounting of all gains, profits and advantages derived by defendant BGC from its copyright infringement, and order defendant BGC to pay to IBM the actual damages that IBM has sustained and defendant BGC's profits attributable to its copyright infringement or statutory damages, including treble damages for willful infringement.

E.     Enter judgment against defendant BGC in an amount equal to IBM's actual damages as determined by the Court.

F.     Increase such judgment by the amount defendant BGC has been unjustly enriched by virtue of its misconduct.

G.     Pursuant to 17 U.S.C. § 505, order defendant BGC to pay IBM's costs and reasonable attorneys' fees.

H.     Declare that defendant BGC breached the IPLA and other IBM licenses.

    I.    Enter judgment in IBM's favor and against defendant BGC for breach of contract for the IPLA and other IBM licenses, in an amount to be determined, plus interest.

    J.    Enter an Order of Seizure directing that defendant BGC deliver all copies of the Informix Software in BGC's possession, custody, or control to the United States Marshall and/or Sheriff of New York County, pursuant to the provisions of Article 71 of the New York Civil Practice Law and Rules and Federal Rule of Civil Procedure 64.

    K.    Grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York  
       January 7, 2010

Respectfully submitted,

/s/ Bronson J. Bigelow_____

**JONES DAY**  
Bronson J. Bigelow (BB-2666)  
222 East 41st Street  
New York, New York 10017  
Tel: 212.326.3939  
Fax: 212.755.7306

Of Counsel:

**JONES DAY**  
Krista S. Schwartz  
77 West Wacker  
Chicago, IL  60601-1692  
Tel:  (312) 782-3939  
Fax:  (312) 782-8585

Attorneys for Plaintiff  
INTERNATIONAL BUSINESS MACHINES CORPORATION