UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

    Plaintiff and Counterclaim Defendant

        - against -

BGC PARTNERS, INC.; BGC BROKERS US,
L.P.; BGC FINANCIAL, L.P.; and BGC USA L.P.

    Defendants and Counterclaim Plaintiffs.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  April 25, 2013
```

10 Civ. 128 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff International Business Machines Corporation ("IBM") brings this action against BGC Partners, Inc., BGC Brokers US, L.P., BGC Financial, L.P., and BGC USA, L.P. (collectively, "BGC") asserting claims for copyright infringement, breach of contract, and replevin. BGC counterclaims for breach of contract and for declaratory judgment. IBM has moved for sanctions against BGC for spoliation of evidence. IBM requests two forms of relief from BGC: (1) an adverse inference that, since 2008, BGC has continued to use and copy Informix software products at levels at least as high as those reported in KPMG's 2008 audit report, and (2) reimbursement to IBM for its attorneys' fees and costs associated with the instant motion. BGC, responds that the Court should impose sanctions upon IBM, in the form of attorneys' fees and costs, for what it terms IBM's "baseless and bad-faith sanctions motion." (Def.'s Opp'n at 17.) For the reasons set forth below, IBM's motion is DENIED and neither party is awarded attorneys' fees or costs.

1

## BACKGROUND[1]

In August 2008, IBM initiated an audit of BGC to determine the extent to which IBM's Informix software was deployed across BGC's computer systems. The August 22, 2008 audit report stated that BGC deployed Informix software in greater numbers than it was entitled to use.[2]  By December 31, 2008, both IBM and BGC retained litigation counsel (see Exs. B; C[3]), and IBM filed its Complaint on January 7, 2010.  In mid-2009, BGC began to replace the Informix software with Sybase, a competing software suite.  (Ex. F at 191-92.)  Throughout the migration process, BGC declined to take affirmative action to collect and preserve information regarding the level at which it utilized the Informix software.  (Id. at 197-98.)  This information was not typically collected by BGC in the normal course of business.  (Id. at 244-46.)

## DISCUSSION

### I.     Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).  District courts "may impose sanctions for spoliation" pursuant to their "inherent power to control litigation." Id.  The movant must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential

---

[1] Familiarity with the underlying factual background of this matter, as set out in the Court's Opinion and Order on IBM's motion for summary judgment, is assumed.  See Int'l Bus. Machs. Co. v. BGC Partners, Inc., No. 10 Civ. 128, Dkt. No. 95 (April 25, 2013) (the "SJ Decision").
[2] The Court does not address either the veracity or admissibility of the KPMG audit report.  See SJ Decision at 5 n.4.
[3] Unless, otherwise noted, all references to lettered exhibits, such as "Ex. A," refer to exhibits to IBM's Memorandum of Law in Support of the Motion for Sanctions due to Spoliationt ("Pl. Br.") or its Reply in Support of the Motion for Sanctions due to Spoliation.  ("Pl. Reply.")

Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002) (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001)).

**II.     Analysis**

While not framed as such, a close reading of IBM's papers and the authority cited suggests that IBM seeks to impose sanctions on BGC for two related, but distinct, decisions: (1) BGC's migration from Informix to Sybase and (2) BGC's failure to collect information regarding its ongoing utilization of Informix software. (See, e.g., Pl. Br. at 7 ("BGC certainly could have mitigated the impact of its decision to alter the computer systems by . . . collecting . . . data prior to the migration of each BGC desk from IBM's Informix software"); id. at 9 ("BGC failed to preserve the computer systems, and also failed to capture any other evidence"); Pl. Reply at 2 ("BGC does not deny that it had control over the computer systems at issue, nor does it deny that it could have collected information about those systems prior to their spoliation.").) It is clear at the outset that the latter is not sanctionable conduct. Parties are "only required to produce documents that exist; [they] have no obligation to create documents to support [their adversary's] theory of the case." Barton Grp., Inc. v. NCR Corp., No. 08 Civ. 5679, 2009 WL 6509348, at *1 (S.D.N.Y. July 22, 2009); see also Getty Props. Corp. v. Raceway Petroleum, Inc., No. 99 Civ. 4395, 2005 WL 1412134, at *3-4 (D.N.J. June 14, 2005). Accordingly, BGC did not have a general obligation to compile information related to the extent of its use of Informix software in the first instance, regardless of that information's utility or relevance.[4]

Whether the migration itself constitutes sanctionable spoliation presents a different question. Because BGC does not dispute that litigation was "'reasonably foreseeable'" by mid-

---

[4] This does not, of course, imply that BGC could ignore a specific interrogatory requesting information about its use of Informix software products. Where such information was not compiled on a regular basis, BGC acted properly in collecting the requested information upon receipt of IBM's interrogatory and responding regarding its deployment of Informix at that point in time. (See Ex. E.)

3

2009, it had an obligation to preserve evidence at that time.  Orbit One Commc'ns, Inc. v. Numberex Corp., 271 F.R.D. 429, 436 (S.D.N.Y. 2010) (quoting Byrnie, 243 F.3d at 107)).  By replacing Informix with Sybase, BGC destroyed direct evidence of its alleged infringement.  See, e.g., KCH Servs., Inc. v. Vainaire, Inc., No. 05 Civ. 777, 2009 WL 2216601 (W.D. Ky. July 22, 2009); Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 110-13 (E.D. Pa. 2005).

      The extent of BGC's use of Informix, of which there is now no direct proof, lies at the heart of IBM's case in chief and is unquestionably relevant.  BGC asserts that it retains data that can be used to create "the estimated numbers of . . . brokers allegedly using the Informix database . . . for every day . . . through the present." (Def.'s Opp'n at 14.)  But the existence of secondary evidence from which an estimate may be created does not obviate the relevance of the evidence that was destroyed.  As a direct result of the migration, "the plaintiff is bereft of the very subject of the litigation." Vainaire, 2009 WL 2216601, at *1.

      Finally, the Court must determine whether BGC acted with a culpable state of mind.  "In analyzing this prong of the spoliation test, some courts in this Circuit have required a showing of bad faith, some have required proof of intentional destruction, and others have drawn an inference of bad faith based on negligence," pursuant to the Second Circuit's conclusion that "'a case by case approach is appropriate.'" Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 434 (S.D.N.Y. 2009) (quoting Byrnie, 243 F.3d at 108).  There is no doubt that BGC's migration, an "'exceptionally complicated' process" taking place over an extended period of time and consuming significant resources, Int'l Bus. Machs. Co. v. BGC Partners, Inc., No. 10 Civ. 128, Dkt. No. 96, at 6, 25 (April 25, 2013), was intentional and beyond the bounds "of the routine, good-faith operation of an electronic information system." Fed. R. Civ. P. 37(e).  Nevertheless, IBM failed to point to proof of BGC's bad faith.

This seems an unusual case.  While IBM cites cases in which computer-based evidence was destroyed after plaintiffs specifically requested that it be preserved and produced, see, e.g., Arista, 608 F. Supp. 2d at 416-17; Vanaire, 2009 WL 2216601, at *1, IBM did precisely the opposite herein.  On December 29, 2008, IBM instructed BGC to "destroy all copies of the Informix database" and informed BGC that, in early 2009, KPMG would "visit [BGC's] datacenters . . . to verify that such destruction has taken place."  (Pl.'s Br. in Support of Mot. for Summary Judgment, Ex. KK.)  In a follow-up letter on January 9, 2009, IBM asserted that it had given BGC "ample time to remove the software."  (Ex. D.)  BGC began its migration from Informix in "the middle" of 2009 (Ex. F at 191), though that process would require approximately two years to complete.  (See id. at 199.)  Yet IBM has failed to present any evidence that it requested that BGC halt the migration prior to filing the instant motion.[5]  IBM now finds itself requesting that BGC be sanctioned for the same destruction of evidence that IBM commanded.

Sanctions "should be molded to serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine" and "should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'"  West, 167 F.3d at 779 (quoting Kronisch v. U.S., 150 F.3d 112, 126 (2d Cir. 1998)).  In light of IBM's command that the Informix database be removed, it would be inappropriate to provide IBM with a remedy and concomitantly punish BGC.  The Court therefore declines to do so.

---

[5] IBM notes that its requests for production include several related to BGC's Informix deployment.  (See Pl.'s Reply at 2-3.)  The discovery requests specifically sought "documents," however, which IBM defined as "writings and printed, typed and other graphic or photographic matter, . . . and other data compilations . . . ."  (Ex. H.)  As discussed supra, there were no such documents and BGC had no duty to create them.

The Court also denies BGC's request that IBM pay its attorneys' fees and costs related to the instant motion. Although "the filing of a motion for sanctions is itself subject to the requirements of [Rule 11] and can lead to sanctions," E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (internal quotations omitted), sanctions "are infrequently granted where the motion was not clearly frivolous, filed for an improper purpose, or not well grounded in fact or law." Goldberg v. Blue Ridge Farms, Inc., No. 10 Civ. 1371, 2005 WL 1796116, at *7 (E.D.N.Y. July 26, 2005). As discussed supra, whether to impose sanctions for spoliation constitutes a close question. IBM's motion was not so deficient as to be entirely without merit or "cross[] the line between zealous advocacy and sanctionable conduct." Sheet Metal Workers' Nat'l Pension Fund v. AUL Sheet Metal Works, Inc., No. 10 Civ. 1371, 2012 WL 32237, at *3 (S.D.N.Y. Jan. 5, 2012).

## CONCLUSION

For the foregoing reasons, both IBM and BGC's motions are DENIED in all respects.

Dated: New York, New York
April 25, 2013

SO ORDERED

/s/ Paul A. Crotty

PAUL A. CROTTY
United States District Judge